### HULL v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. February 28, 1905.)

No. 1,099.

MASTER AND SERVANT—INJURY TO SERVANT—FELLOW SERVANT—INCOMPETENCY —ASSUMED RISK.

Plaintiff, the most experienced of 14 men working in the yard of defendant's railroad shops, had knowledge of the incompetency of four other servants to pile lumber, and that they had piled lumber in the yard. Plaintiff, with another servant, had previously fixed a leaning pile that was likely to fall, which had been piled by such incompetent servants, but made no objection to their employment, and was injured while taking lumber from another pile which had also been improperly piled by them. The defects in such pile were in plain view, and plaintiff's only excuse for not seeing it was that he did not take particular notice, because his attention was on his work. *Held*, that plaintiff assumed the risk.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 567–573.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This is an action for damages for personal injuries received by the plaintiff in error while in the employ of the defendant in error, through the falling of a lumber pile from which he was removing certain heavy timbers. The trial court directed the jury to return a verdict for the defendant in error, which was accordingly done, and judgment entered thereon. The plaintiff in error excepted to this action of the court, and sued out a writ of error to this court.

It appears from the pleadings and testimony that the plaintiff in error is a citizen of the state of Washington, and the defendant in error a corporation organized under the laws of the state of Wisconsin, owning and operating railroad shops at Tacoma, Wash.; that in the inclosure surrounding said shops there was a large space used as a lumber yard, for the purpose of receiving, unloading, and piling lumber and timbers for use in the said shops, and that this yard was under the general supervision of a foreman, who had charge and control of the men working therein; that along and through said lumber yard, and extending into the shops, there were railroad tracks for the purpose of hauling cars loaded with lumber, and receiving lumber and timbers, into the yard, and for the purpose of conveying lumber and timbers on trucks or cars into the shops; that the plaintiff in error had worked for

the defendant in error at said yard most of the time for two years prior to the accident; that on the 25th day of November, 1902, about 5:30 o'clock in the evening, the plaintiff in error and three others who had just come into the mill were told by the foreman of the yard to go and get some timbers of specified dimensions, which they would find somewhere up the yard between the tracks. They took a truck and proceeded up one track, and, after having switched to a second track, they came to a pile where they saw the timbers they wanted, between the tracks, piled parallel with the tracks. There was some decking on top of the pile, which they removed, and then proceeded to take away the first tier, which was about four feet in height. While doing so, some heavy timbers of the second and third tiers of the pile, about eight feet high, fell upon the plaintiff in error, crushing his back and legs, injuring his spine, producing permanent paralysis of the lower limbs, and otherwise injuring him for life. For the injuries received he claims damages in the sum of $20,000, alleging that the defendant in error was entirely responsible for the accident, in employing incompetent men, namely, four Swedes inexperienced in the work, who failed to securely bind and stay the said timbers and lumber when piling it; that defendant in error knew of the incompetency of said workmen, and negligently failed to instruct them in the work of piling and handling lumber. It is further alleged that the plaintiff in error did not know that the said incompetent workmen had piled this particular pile of lumber, and, owing to the darkness at the hour of the accident, was not in a position to know of the unsafe condition thereof, and was not warned of it by the defendant in error. As matter of defense the defendant in error pleads that the accident resulted wholly through the careless and negligent conduct of the plaintiff in error in failing to take any precaution for his safety; that the said lumber was piled by employés of the defendant in error, and in the work of moving timbers therefrom the plaintiff in error was assisted by other employés, all of whom were engaged in a common service and employment, and were fellow servants and co-employés of the plaintiff in error; that the accident was therefore occasioned by the acts of fellow servants of the plaintiff in error. The plaintiff in error testified that there were 12 or 14 men working in the yard at that time. Among this number were four Swedes, who went to work in the yard some time in the previous August. They were not considered competent men to pile lumber by the men who were working around the yard. The plaintiff in error knew that they were incompetent men; he believed he could tell an incompetent man when he saw him at work. He knew these incompetent Swedes piled lumber, and that they piled it up in any way, just as one who does not know how to pile lumber does it. He had seen gangs working there where they had no one with them who understood the work of piling lumber, and he noticed that some of the piles were not piled right. When he had taken particular notice, he had seen piles that were not properly piled. He remembered seeing one pile in the yard that was improperly piled, and he and another pried it over, as it was leaning and was likely to fall on some one. He testified that all the defects of this particular pile were in plain view if he had taken any particular notice of it, but his attention was on his work, and he did not notice how the timbers were piled. They were not directed to any particular pile when they were sent up the yard for the timber by the foreman. They were removing the second tier when the pile fell. The court asked the question: "To whom did the foreman give this particular order for timbers? A. Well, he gave it to me. Q. Did you have charge of filling this order? A. I was the oldest and most experienced man there, and I presume he gave it to me with the idea that I would take the order and find the timbers." O. W. Lewis testified that he worked in the lumber yard. He remembered the four people working there, called the four Swedes. They were very careless, and did not know how to pile lumber, and did not seem to try to learn. He saw three of them piling the lumber which fell and injured the plaintiff. This pile was placed there the last of October or the first week in November. Tom Lot worked in the lumber yards, and was acquainted with the four Swedes; saw them handling lumber. They did not act as if they knew very much about it; they handled it very awkwardly, and, when they were piling by themselves, he testified that they just threw it up in any old shape. Other witnesses testified that the four

Swedes were employed to handle lumber; that they handled it very awkwardly. They had been there about two months before the plaintiff in error was injured. Their general reputation about the yard was very poor.

Govnor Teats, for plaintiff in error.

B. S. Grosscup, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the facts, delivered the opinion of the court.

The plaintiff in error contends, in effect, that the only question to be decided in this case was whether the plaintiff was guilty of contributory negligence in failing to use the care which a man of ordinary prudence would have exercised under like circumstances to prevent injury to himself, and that the evidence was not so conclusive against him as to justify the court in directing a verdict for the defendant, but was a question that should have been submitted to the jury for determination under proper instructions from the court. The defendant in error contends, on the other hand, that the evidence introduced on behalf of the plaintiff established the fact that he assumed the risk of the employment in which he was engaged at the time of the injury, and that he was therefore not entitled to recover.

The defense of an assumed risk was set up in the answer of the defendant, and was submitted to the court in the motion of the defendant to instruct the jury to return a verdict for the defendant. The doctrine of an assumed risk here referred to is that where a servant enters into or remains in an employment with a knowledge of defects in the master's premises, and of the danger incident thereto, and continues in the service without objection and without promise of change, he is presumed to have assumed all the consequences resulting from such defects, and to have waived all right to recover from injuries caused thereby. Was the plaintiff chargeable with such knowledge? He was the oldest and most experienced man employed in the lumber yard. The order to get the timbers was given to him. The plaintiff testified that the order was given to him probably because he was the oldest and most experienced man there. He was acquainted with the four Swedes. He knew that they had been at work in the yard since the previous August, and that they were incompetent. He could tell an incompetent man when he saw him at work. He knew these incompetent Swedes piled lumber, and that they piled it up in any way, just as one does who does not know how to pile lumber. He had seen gangs working there where they had no one with them who understood the work of piling lumber, and he noticed that some of the piles were not piled right. He saw one pile in the yard that was improperly piled, and he and another man pried it over, as it was leaning and was likely to fall on some one. All the defects of the pile that fell on plaintiff and injured him were in plain view, if he had taken any particular notice, but his attention was on his work, and he did not notice how the pile was piled. There is no evidence that the plaintiff objected to the employment of these four incompetent Swedes in the piling of lumber, or that he gave no-

tice to any one in charge of the work or of the premises that their employment was rendering the premises dangerous, and he does not appear to have had any promise from any one in authority or otherwise that such dangers would be removed or abated. The only evidence that can be claimed to in any way qualify plaintiff's knowledge of the defective premises was the fact that there were 12 or 14 men working in the yard at that time, and that he did not know that these incompetent workmen had piled the particular pile of lumber that fell and caused the injury. But the fact remains that he knew they were employed in piling lumber; that at least one dangerous pile had been found, and that he and another workman had removed that danger; and that the defects of the pile that fell were in plain view. His excuse is that he did not take particular notice, for the reason that his attention was on his work. But the law does not admit of this excuse. The servant must not go blindly to work where there is danger. He must open his eyes and take notice of his surroundings. He must see those things that are open to observation, and, if he fails in this respect, the risk is his own. The defective condition of the premises where plaintiff was employed was so obvious, and the knowledge of the plaintiff with respect thereto so complete, that only one inference could be drawn therefrom, and that was that he assumed the risk of the employment, and, upon the evidence, this was a question for the court.

The judgment of the court below is affirmed.